**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Sarah R. Lavelle, Esq. (93383)           *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
slavelle@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COLLEEN KOSLOSKY** | : | **Civil Action No.** |
| **110 Whiteman Avenue** | : | |
| **Stratford, NJ 08084** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **AMERICAN AIRLINES, INC.** | : | |
| **8000 Essington Avenue** | : | |
| **Philadelphia, PA 19153** | : | |
| | : | |
| **4333 Amon Carter Boulevard** | : | |
| **Fort Worth, TX 76155** | : | |
| **Defendant.** | : | |

### CIVIL ACTION

Plaintiff, Colleen Koslosky (hereinafter "Plaintiff"), by and through her attorney, Koller

Law, LLC, bring this civil matter against American Airlines, Inc. (hereinafter "Defendant"), for

violations of Title VII of the Civil Rights Act of 1964, as amended, the Americans with

Disabilities Act of 1990 ("ADA"), as amended, and the Pennsylvania Human Relations Act

("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, American Airlines, Inc. is an airline with a location at 8000 Essington Avenue, Philadelphia, PA 19153 and with a corporate headquarters located at 4333 Amon Carter Boulevard, Fort Worth, TX 76155.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth

2

herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended and the Pennsylvania Human Relations Act.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging gender and disability discrimination against Defendant.

14. The Complaint was assigned a Charge Number of 530-2018-02371 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated July 29, 2018. Plaintiff received the notice by mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On December 12, 1983, Plaintiff was hired by US Air as a Customer Service Agent in New York City, New York.

21. Plaintiff was well qualified for her position and performed well.

22. In April of 1992, Plaintiff was transferred to the Philadelphia International Airport.

23. On December 9, 2013, US Air merged with Defendant and Plaintiff became an employee of Defendant.

24. In or around 2008, Plaintiff was diagnosed with malignant melanoma, the most serious form of skin cancer.

25. In or around 2010, Plaintiff was required to have an operation to surgically remove the melanoma from her left arm.

26. The surgery was performed by Dr. Brian Czerniecki at the University of Pennsylvania Hospital.

27. In or around 2013, Plaintiff had a second procedure to remove melanoma from her lower right leg.

28. This surgery was also performed by Dr. Brian Czerniecki at the University of Pennsylvania Hospital.

29. Plaintiff was placed on a medical leave of absence for approximately five (5) months.

30. As a result of Plaintiff's diagnosis and surgery, she suffered nerve damage and edema in her right leg, which affected Plaintiff's ability to walk.

31. Due to this, Plaintiff's Primary Care Physician, Dr. Katharine Garnier, wrote Plaintiff a note restricting the amount that she walked at work and requesting that Plaintiff specifically work in Concourse B in order to minimize the amount that Plaintiff had to walk.

32. Plaintiff checked in for her scheduled shift at Terminal B. Until this point in time, Plaintiff's assignments in terms of terminals varied based upon the schedule.

33. Plaintiff physically handed Dr. Garnier's note to Naomi LNU, Human Resource Representative, and met with her on three (3) occasions in order to pursue her request for her reasonable accommodation.

34. However, during the third meeting, Naomi informed Plaintiff that Defendant could not accommodate Plaintiff.

35. Lawrence Raikes, Supervisor, scheduled Plaintiff to work at the far end of Concourse C, usually in gates C25 – C30.

36. This caused Plaintiff to walk an unnecessary amount and was in direct violation of Plaintiff's medical restrictions and request for a reasonable accommodation.

37. Plaintiff complained in person to Christine Thompson, Manager, about not being accommodated.

38. Ms. Thompson spoke with Mr. Raikes and requested that he schedule Plaintiff in Concourse B as per her accommodation request. Ms. Thompson assured Plaintiff that her accommodation request was taken care of.

39. However, the following day, Mr. Raikes scheduled Plaintiff back to the far end of Concourse C.

40. Plaintiff then met with and complained to Beth Norton, Director of Customer Care, about her need for a reasonable accommodation and of Mr. Raikes' refusal to accommodate her.

41. Ms. Norton informed Plaintiff that her reasonable request for an accommodation was not how Naomi had "presented it to her" and that her request was approved.

42. However, Mr. Raikes stated to Plaintiff that he "wouldn't do anything until it said it in writing," and continued to schedule Plaintiff to the far end of Concourse C as Ms. Norton did not submit the proper paperwork for Plaintiff to receive her accommodation.

43. For over one (1) year, Plaintiff attempted to contact Ms. Norton through multiple phone calls, sliding a note underneath her door and going to her office about Defendant violating her medical restriction and to follow up with Ms. Norton's approval of her accommodation request.

44. However, Ms. Norton did not respond to Plaintiff's numerous attempts at contact.

45. Due to Defendant's refusal to grant Plaintiff's accommodation request, Plaintiff was physically unable to report to work on multiple occasions and was forced to miss multiple months of work.

46. Plaintiff then met with Pat Lewis, Manager of Administration, and complained about Defendant's refusal to accommodate her and that this caused her to miss significant time from work.

47. Mr. Lewis was the first representative of Defendant to write down Plaintiff's complaint.

48. Upon hearing Plaintiff's complaint, Mr. Lewis suggested that Plaintiff reach out to Bob Yuri, Human Resource Representative.

49. Plaintiff followed Mr. Lewis' instructions and contacted both Mr. Yuri and Mike Whittle, Sr. Manager – Employee Relations Operational Support, regarding her accommodation request.

50. Mr. Whittle suggested that Plaintiff complete a second "Request for Accommodation" Form and fax it to Mr. Yuri.

51. Plaintiff followed Mr. Whittle's instructions.

52. Several weeks later, Mr. Yuri called Plaintiff and informed her that as per Ms. Norton's instructions, Defendant could not accommodate her, but could put her in another position, such as in the Ticket Counter and provide her with training.

53. This proposed transfer would have been worse on Plaintiff's disability than the accommodation requested for her by Dr. Garnier because it required more walking and standing at the Ticket Counter.

54. Plaintiff informed Mr. Yuri of this, but he insisted that it was all that Defendant could do.

55. On July 28, 2017, Plaintiff sent an email to Mr. Whittle, Olympia Colasante, VP, PHL Hub Operations, Tricia Herschell, Managing Director Domestic & International HR Business Partners, and Robert Isom, President, complaining about Defendant's continued and prolonged refusal to accommodate her.

56. Within minutes, Ms. Colasante responded to Plaintiff that she would take care of it.

57. The next day, Ms. Norton called Plaintiff and informed her that Defendant would grant her accommodation request and assign her to work in Concourse B.

58. On September 27, 2017, Joe Wilson, Manager, and Ms. Norton suspended Plaintiff due to certain posts on Plaintiff's personal Facebook page.

59. On October 6, 2017, Ms. Norton terminated Plaintiff.

60. Defendant's stated reason for terminating Plaintiff was due to Plaintiff allegedly violating Defendant's social medical policy, and that Plaintiff identified herself as an employee of Defendant.

61. Plaintiff never identified herself as an employee of Defendant on her social media.

62. However, Tom Doersom, Customer Service Supervisor, has a public Facebook with multiple posts calling President Donald Trump "Hitler, his supports Nazis", and "racist homophobic bigots."

63. Dr. Doersom identifies himself as an employee of Defendant on his social media page.

64. Upon information and belief, Defendant has not disciplined or terminated Mr. Doersom for his posts.

## COUNT I – GENDER DISCRIMINATION
## TITLE VII OF THE CIVILE RIGHTS ACT OF 1964, AS AMENDED

65. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

66. Plaintiff is a member of protected classes in that she is female.

67. Plaintiff was qualified to perform the job.

68. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

69. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

70. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

71. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

72. Defendant terminated Plaintiff.

73. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT II – GENDER DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

74. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

75. Plaintiff is a member of protected calluses in that she is female.

76. Plaintiff was qualified to perform the job.

77. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

78. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

79. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

80. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

81. Defendant terminated Plaintiff.

82. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT III – DISABILITY DISCRIMINATION**

## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

83. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

84. Plaintiff is disabled under the ADA.

85. Plaintiff has disabilities that substantially limit major life activities.

86. Plaintiff was qualified to perform the job.

87. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

88. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

89. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

90. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

91. The purported reason for Defendant's decision is pretextual.

92. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

93. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

94. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

95. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

96. Plaintiff is disabled under the PHRA.

97. Plaintiff has disabilities that substantially limit major life activities.

98. Plaintiff was qualified to perform the job.

99. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

100. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

101. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

102. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

103. The purported reason for Defendant's decision is pretextual.

104. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

105. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

106. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT V – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

107. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

108. Plaintiff engaged in activity protected by the ADA when she requested a reasonable accommodation.

109. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

110. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS COMMISSION

111. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

112. Plaintiff engaged in activity protected by the ADA when she requested a reasonable accommodation.

113. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

114. There exists a causal connection between Plaintiff's participation of the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Colleen Koslosky, requests that the Court grant her the following relief against Defendant:

    (a)      Compensatory damages;

    (b)      Punitive damages;

    (c)      Liquidated damages;

    (d)      Emotional pain and suffering;

    (e)      Reasonable attorneys' fees;

    (f)      Recoverable costs;

(g)  Pre and post judgment interest;

(h)  An allowance to compensate for negative tax consequences;

(i)  A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, the ADA and the PHRA.

(j)  Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)  Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)  Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

13

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: October 29, 2018          By:

David M. Koller, Esquire (90119)
Sarah R. Lavelle, Esquire (93383)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
slavelle@kollerlawfirm.com

*Counsel for Plaintiff*

14