# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COLLEEN KOSLOSKY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 2:18-CV-04654-JDW** |
| ) | |
| **AMERICAN AIRLINES, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Daniel E. Farrington (*pro hac vice*)
Margaret J. Scheele (*pro hac vice*)
Fisher & Phillips LLP
7501 Wisconsin Avenue, Suite 1220W
Bethesda, MD 20814
Tel. 301-951-1538
Fax 301-880-5031
dfarrington@fisherphillips.com
mscheele@fisherphillips.com

*Attorneys for Defendant*
*American Airlines, Inc.*

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF UNDISPUTED FACTS ..................................................... 3

    A.    AMERICAN AIRLINES' CUSTOMER SERVICE OPERATION IN PHILADELPHIA. ............ 3

    B.    KOSLOSKY REQUESTS – AND THEN REPEATEDLY REFUSES – AN ACCOMMODATION. .......................................................................... 4

    C.    KOSLOSKY'S RACIST FACEBOOK POSTS CAUSE WIDESPREAD OUTRAGE AND AMERICAN AIRLINES TERMINATES HER EMPLOYMENT. ........................... 6

    D.    TOM DOERSAM'S FACEBOOK POSTS. ...................................................... 9

    E.    KOSLOSKY'S CLAIMS. ......................................................................... 9

    F.    KOSLOSKY'S CHARGE OF DISCRIMINATION. .......................................... 10

III.  LEGAL ANALYSIS ..................................................................................... 10

    A.    LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT. ................. 11

    B.    KOSLOSKY'S FAILURE TO ACCOMMODATE CLAIM IS UNTIMELY .............. 11

    C.    AMERICAN AIRLINES DID NOT FAIL TO ACCOMMODATE KOSLOSKY ......... 13

    D.    AMERICAN AIRLINES IS ENTITLED TO SUMMARY JUDGMENT ON KOSLOSY'S GENDER, DISABILITY AND RETALIATION. ................................................ 15

        1.    Koslosky's Disability Discrimination and Retaliation Claims are Precluded by Her Sworn Testimony That She was Not Pursuing Those Claims. ................................................................................... 16

        2.    Koslosky Cannot Demonstrate a *Prima Facie* Case of Discrimination or Retaliation. ............................................................................ 17

             a.    Koslosky Has Not Identified Similarly Situated Comparators Who Were Treated More Favorably. ............................................... 18

             b.    There is No Evidence of a Causal Nexus Between Koslosky's Protected Characteristics or Activity and her Termination. .......... 19

        3.    Koslosky Cannot Rebut American Airlines' Explanation. ...................... 20

IV.  CONCLUSION ............................................................................................ 21

**Cases**

Allen v. PetSmart, Inc., 512 F. Supp. 2d 288 (E.D. Pa. 2007) ...................................... 19

Brzozowski v. Pa. Tpk. Comm'n, 165 F. Supp. 3d 251 (E.D. Pa. 2016) .................................... 13

Burton v. Teleflex Inc., 707 F.3d 417 (3d Cir. 2013) ........................................... 15, 16

Caplan v. L Brands/Victoria's Secret Stores, LLC, 210 F. Supp. 3d 744 (W.D. Pa. 2016) ......... 20

Diaz v. City of Phila., 565 F. App'x 102 (3d Cir. 2014) ........................................... 14

Dorsey v. The Salvation Army, No. CIV.A. 04-844, 2005 WL 181912
      (E.D. Pa. Jan. 27, 2005) ...................................................................... 16

Evans v. Nine W. Grp., Inc., No. CIV.A. 00-4850, 2002 WL 550477
      (E.D. Pa. Apr. 15, 2002) ..................................................................... 17

Fayewicz v. Redner's Markets, Inc., No. CIV.A. 09-2596, 2010 WL 1644626
      (E.D. Pa. Apr. 23, 2010) ..................................................................... 18

Foster v. JLG Indus., No. CIV. 1:CV-03-2088, 2006 WL 223899 (M.D. Pa. Jan. 30, 2006) ...... 16

Francis v. Lehigh Univ., No. 10-CV-4300, 2013 WL 787089 (E.D. Pa. Mar. 1, 2013) ............. 18

Fusco v. Bucks Cty., No. CIV.A. 08-2082, 2009 WL 4911938 (E.D. Pa. Dec. 18, 2009)........... 12

Gaddis v. Brandywine Senior Care, Inc., No. CV 18-2479, 2019 WL 4384139
      (E.D. Pa. Sept. 11, 2019) .................................................................... 21

Gans v. Mundy, 762 F.2d 338 (3d Cir. 1985)................................................................. 11

Gillyard v. Geithner, 81 F. Supp. 3d 437 (E.D. Pa. 2015).......................................... 17

Hamilton v. Se. Pa. Transp. Auth., No. CIV.A. 12-804, 2014 WL 2862146
      (E.D. Pa. June 24, 2014) ..................................................................... 17

Hofacker v. Wells Fargo Bank Nat'l Ass'n, 179 F. Supp. 3d 463 (E.D. Pa. 2016)............... 14, 15

Hubbard v. Ashcroft, 44 F. App'x 542 (3d Cir. 2002) ............................................... 19

In re Actiq Sales & Mktg. Practices Litig., 790 F. Supp. 2d 313 (E.D. Pa. 2011) ...................... 11

Jeffrey v. Thomas Jefferson Univ. Hosp., Inc., No. CV 17-0531, 2019 WL 2122989
      (E.D. Pa. May 14, 2019) ...................................................................... 15

Johnson v. NewCourtland, Inc., No. CIV.A. 13-4238, 2015 WL 894320
      (E.D. Pa. Mar. 3, 2015)....................................................................... 19

Keyhani v. Trs. of Univ. of Pa., No. CV 17-3092, 2019 WL 2568279
      (E.D. Pa. June 21, 2019) ..................................................................... 13, 14

Krouse v. Am. Sterilizer Co., 126 F.3d 494 (3d Cir. 1997)....................................... 15

Larochelle v. Wilmac Corp., 769 F. App'x 57 (3d Cir. 2019)......................................................... 16

Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288 (3d Cir. 2012) ................................................... 11

Mandel v. M & Q Packaging Corp., 706 F.3d 157 (3d Cir. 2013) ................................................. 12

McKenna v. Healthease, Inc., No. CIV.A. 10-3940, 2013 WL 1702639

  (E.D. Pa. Apr. 19, 2013) ......................................................................................................... 20

McWilliams v. Cmty. Educ. Ctrs., No. CV 14-4783, 2015 WL 12843826

  (E.D. Pa. Nov. 13, 2015)......................................................................................................... 18

Med. Protective Co. v. Watkins, 198 F.3d 100 (3d Cir. 1999).................................................... 11

Mercer v. Se. Pa. Transit Auth., 26 F. Supp. 3d 432 (E.D. Pa. 2014) ................................... 12, 13

Mullen v. Northampton Twp., No. 2:18-CV-03113-JDW, 2019 WL 5803974

  (E.D. Pa. Nov. 7, 2019)........................................................................................................... 17

Myatt v. Village, No. CV 19-130, 2019 WL 2288116 (E.D. Pa. May 29, 2019)........................ 13

Oliver v. Clinical Practices of Univ. of Pa., 921 F. Supp. 2d 434 (E.D. Pa. 2013) ..................... 18

Omnipoint Commc'ns Enters., L.P. v. Newtown Twp., 219 F.3d 240 (3d Cir. 2000)................. 11

Poper v. SCA Americas, Inc., No. CIV.A. 10-3201, 2012 WL 3288111

  (E.D. Pa. Aug. 13, 2012)........................................................................................................ 15

Sawa v. RDG-GCS Joint Ventures III, No. CV 15-6585, 2017 WL 3033996

  (E.D. Pa. July 14, 2017)......................................................................................................... 19

Shultz v. Potter, 142 F. App'x 598 (3d Cir. 2005) ..................................................................... 14

Solomon v. Sch. Dist. of Phila., 532 F. Appx. 154 (3d Cir. 2013)............................................... 14

Thompkins v. PNC Bank, No. 10-CV-163, 2010 WL 4116876 (W.D. Pa. Oct. 15, 2010).......... 16

Washington-Morris v. Bucks Cty. Transp., Inc., No. CV 17-3631, 2018 WL 2021081

  (E.D. Pa. May 1, 2018) .......................................................................................................... 12

Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751 (3d Cir. 2004) ................................ 17

Wooler v. Citizens Bank, No. CIV.A. 06-1439, 2006 WL 3484375 (E.D. Pa. Nov. 30, 2006)... 21

Yovtcheva v. City of Phila. Water Dep't, 518 F. App'x 116 (3d Cir. 2013) ................................ 14

**Statutes**

42 U.S.C. § 12117................................................................................................................... 12

42 U.S.C. § 2000e-5................................................................................................................ 12

43 Pa. Cons. Stat. § 959 ......................................................................................................... 12

## Rules

Fed. R. Civ. P. 56...........................................................................................................11

## Regulations

29 C.F.R. § 1630.9........................................................................................................15

29 C.F.R. § Pt. 1630, App...........................................................................................14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|                              |     |                                          |
| ---------------------------- | --- | ---------------------------------------- |
| **COLLEEN KOSLOSKY,**        | )   |                                          |
|                              | )   |                                          |
| **Plaintiff,**               | )   |                                          |
|                              | )   |                                          |
| v.                           | )   | **Civil Action No. 2:18-CV-04654-JDW**   |
|                              | )   |                                          |
| **AMERICAN AIRLINES, INC.,** | )   |                                          |
|                              | )   |                                          |
| **Defendant.**               | )   |                                          |

---

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant American Airlines, Inc. ("American Airlines" or "the Company"), by and through its undersigned counsel, hereby files this Memorandum of Law in Support of its Motion for Summary Judgment. As is demonstrated more fully below, there are no disputed material facts and American Airlines is entitled to summary judgment on Plaintiff Colleen Koslosky's ("Koslosky") gender discrimination, failure to accommodate, disability discrimination, and retaliation claims.

## I.   INTRODUCTION

American Airlines employed Koslosky as a customer service agent. In 2013, Koslosky had surgery on her leg that left her with limitations on her ability to engage in "excessive walking" and, starting in 2014, repeatedly asked to be assigned to work at gates exclusively in one terminal to limit her walking. Although American Airlines declined to assign Koslosky exclusively to one terminal because it would have limited the Company's ability to dispatch its agents according to operational needs, the Company repeatedly offered to accommodate Koslosky's walking restrictions by having her work customer service functions that did not require much walking. Koslosky refused to work these alternative customer service functions, even though she

acknowledges they would have accommodated her walking restrictions. Koslosky filed a charge of discrimination one and a half years after American Airlines denied her request to work exclusively in one terminal. American Airlines is entitled to summary judgment on Koslosky's failure to accommodate claim because it is untimely and because Koslosky thwarted the Company's good faith attempts to accommodate her by refusing customer service functions that did not require extended walking.

In 2017, Koslosky made multiple racist posts on her publicly accessible Facebook page, including a comment that slavery was a benefit for African-Americans and that any African-American who does not see it that way lacks humility and respect, and a comment that blue-eyed people should unite against reproducing with brown-eyed people. Koslosky's posts went viral and she was identified as an American Airlines employee, which generated complaints from customers, created a public relations crisis, and caused widespread outrage among American Airlines' workforce. American Airlines' vice president responsible for 9,000 Philadelphia-based employees felt the need to issue a statement to every employee reaffirming the Company's commitment to diversity and inclusion and terminated Koslosky for her public racist statements that were at odds with American Airlines' values and several of its policies.

Even though 75% of the customer service agents in Philadelphia were women, as was everyone involved in the investigation into Koslosky's posts and the person who decided to terminate her employment, Koslosky alleges that she was terminated because she is a woman. The claim is meritless.

Additionally, even though Koslosky testified in her deposition that she was not asserting that American Airlines terminated her because of her disability or in retaliation for requesting an accommodation, she continues to pursue those claims. They too lack merit.

## II.    STATEMENT OF UNDISPUTED FACTS[1]

### A.    AMERICAN AIRLINES' CUSTOMER SERVICE OPERATION IN PHILADELPHIA.

American Airlines employed Koslosky as a customer service agent at the Philadelphia International Airport.  (SOF ¶ 1.)  Customer service agents perform a variety of functions at the airport, including working at the ticket counter, the gates, international recheck, Special Services, and the Passenger Operations Center ("POC").  (SOF ¶ 2.)  The particular function a customer service agent works is determined by a seniority-based bidding process the agents periodically undertake.  (SOF ¶ 3.)  Koslosky worked as a gate agent, but she was among the most senior customer service agents in Philadelphia and had the seniority to bid into and work any of the customer service functions.  (SOF ¶¶ 4–5.)  All customer service agents are paid on the same pay scale and entitled to the same benefits regardless of which function they bid and work.  (SOF ¶ 6.)

Customer service agents are subject to various Company policies, including the Professional Conduct Standards for Passenger Service Employees, the Work Environment policy, and the Social Media policy.  (SOF ¶ 7.)  The agents reported to customer service supervisors who, in turn, reported to customer service managers who, in turn, reported to senior managers.  (SOF ¶¶ 8–9.)  The senior managers reported to Managing Director of Customer Care Beth Norton, who reported to Vice President Olympia Colasante.  (SOF ¶¶ 11–12.)  Colasante was American Airlines' most senior executive in Philadelphia and was responsible for the Company's entire operation there and its 9,000 Philadelphia-based employees.  (SOF ¶ 13.)

---

[1]    American Airlines has filed a Statement of Undisputed Material Facts ("SOF") contemporaneously with this Memorandum of Law.

## B. KOSLOSKY REQUESTS – AND THEN REPEATEDLY REFUSES – AN ACCOMMODATION.

American Airlines operates most of its domestic flights out of Terminals B and C in Philadelphia, each of which have approximately fifteen gates. (SOF ¶ 14.) Before their shifts, customer service agents working the gate function reported to an office near gate B5 to receive their daily assignments from a customer service supervisor. (SOF ¶ 15.) Typically, an agent was assigned to work one gate per shift and handle all the flights in and out of that gate. (SOF ¶ 16.) There are circumstances, however, such as in the case of poor weather, mechanical delays, and diverted flights, that it is necessary to reassign a gate agent to another gate, including a gate in a different terminal. (SOF ¶ 17.)

In 2013, Koslosky had surgery on her leg that made it difficult for her to walk from the assignment office at Gate B5 to gate assignments in Terminal C. (SOF ¶¶ 18–19.) On August 16, 2016, Koslosky submitted a Request for Accommodation form that indicated she was limited in her ability to engage in "excessive walking," and asked to be assigned exclusively to gates in Terminal B as an accommodation.[2] (SOF ¶ 20.)

Human Resources Manager Bob Yori, Human Resources Specialist Naomi Postlewait, and Norton discussed Koslosky's request. (SOF ¶¶ 22–24.) Norton concluded that assigning an agent exclusively to gates in one terminal would inhibit the Company's ability to utilize all its agents and dispatch them as necessary to service the operation, but that the Company could accommodate Koslosky's walking restrictions in one of the customer service functions that do not require much

---

[2]    Koslosky made informal requests to be assigned exclusively to gates in Terminal B beginning in 2014. (SOF ¶ 21.)

walking, including the ticket counter, Special Services or POC.[3] (SOF ¶¶ 25–26.) Thus, on August 22, 2016, Postlewait informed Koslosky that her request to be assigned exclusively to gates in Terminal B was denied but noted that Koslosky could bid and hold one of the other customer service functions that would meet her physical limitations. (SOF ¶ 28.) Koslosky, however, refused to consider working another customer service function.[4] (SOF ¶ 29.)

On July 18, 2017, Koslosky submitted another Request for Accommodation form raising the identical walking restriction and asking for the identical accommodation of working exclusively at gates in Terminal B that she requested – and that American Airlines denied – a year earlier. (SOF ¶ 33.) Yori spoke with Koslosky and asked her to reconsider the Company's suggestion that she work one of the customer service functions that did not require extended walking. (SOF ¶ 34.) Yori explained to Koslosky that the Company was trying to accommodate her restrictions, even if it was not precisely the accommodation Koslosky wanted. (SOF ¶ 35.) He assured her that if she accepted assignment into another customer service function American Airlines would provide any additional training she needed. (SOF ¶ 36.)

On July 26, 2017, Yori followed up his conversation with Koslosky with a written denial of her renewed request to work exclusively in Terminal B "due to the required flexibility [the] operation needs to assign agents to whatever concourse and gates are in need of staffing as a result of often spontaneous gate changes, diversions and irregular operations." (SOF ¶ 37.) Yori noted,

---

[3]     Koslosky acknowledges that working the ticket counter, Special Services, recheck or POC functions would not have required excessive walking and would have been consistent with her physical restrictions. (SOF ¶ 27.)

[4]     Koslosky claims that within a week of Postlewait telling Koslosky that her request to work exclusively in Terminal B was denied, Norton told her that she would reverse course and grant the request. (SOF ¶ 30.) Norton denies that such a meeting took place. (SOF ¶ 31.) This dispute is not material, however, because within a week of this alleged conversation Koslosky knew that her request to be assigned exclusively to Terminal B was not being granted. (SOF ¶ 32.)

however, that American Airlines would be willing to accommodate Koslosky's restrictions by reassigning her to a different customer service function, including the ticket counter, POC and Special Services. (SOF ¶ 38.) Once again, however, Koslosky refused to consider working one of the customer service functions that did not require extended walking. (SOF ¶ 39.)

Koslosky thereafter took her request to Colasante. (SOF ¶ 40.) Although Colasante recognized that limiting Koslosky to one terminal could interfere with the operation by impairing the Company's ability to dispatch an agent to where the work was and found no fault in the earlier decisions to deny Koslosky's requests, she decided to grant the request "solely for the purpose of helping Colleen." (SOF ¶¶ 41–43.) On August 2, 2017, Norton informed the operation that Koslosky was to be assigned exclusively to gates in Terminal B and Koslosky worked in Terminal B from then through the termination of her employment. (SOF ¶¶ 44–45.)

### C. KOSLOSKY'S RACIST FACEBOOK POSTS CAUSE WIDESPREAD OUTRAGE AND AMERICAN AIRLINES TERMINATES HER EMPLOYMENT.

Koslosky had a Facebook account that she made open to the public and was connected to almost 100 of her American Airlines coworkers as "friends" on Facebook.[5] (SOF ¶¶ 46–47.) In September 2017, an individual who considered Koslosky's publicly available Facebook posts to be racist forwarded several of them to a wide audience and identified Koslosky as an American Airlines employee. (SOF ¶ 50.) Included among the offensive posts were: (1) Koslosky's comments that African-Americans lacked humility and respect if they did not get on their knees

---

[5] In addition to being connected to American Airlines by virtue of her Facebook connection to nearly 100 coworkers, Koslosky had posted to her Facebook page a copy of a message that American Airlines' CEO distributed to all employees and, above the CEO's message, wrote "HOLY SH!T! Look what I just found in my company email!" (SOF ¶ 48.) Koslosky acknowledges that anyone looking at this post would know that she was an American Airlines employee. (SOF ¶ 49.)

and express gratitude that their ancestors were captured, involuntarily brought to America, and enslaved; (2) Koslosky's comments extolling the superiority of blue-eyed people and encouraging blue-eyed people to "unite" against reproducing with brown-eyed people; and (3) a reference to "cotton pickin'" that, in the context of Koslosky's other race-based invective, appeared to be yet another reference to slavery. (SOF ¶¶ 51–53.)

Recipients of Koslosky's posts re-forwarded them and the posts "went viral." (SOF ¶ 54.) People collaged Koslosky's posts and put them on American Airlines' official Facebook and Twitter pages identifying Koslosky as an American Airlines employee. (SOF ¶ 55.) An American Airlines employee in Ft. Lauderdale called Koslosky to tell her that customers and employees as far away as Seattle were talking about Koslosky's posts, and multiple customers complained about the Company employing someone who expressed racist views. (SOF ¶ 56–57.)

Norton and Colasante first learned about the situation from an employee who complained by email in the early hours of September 26, 2017 that Koslosky was being "openly racist" on Facebook and stating that she and other employees were highly offended by Koslosky's conduct. (SOF ¶ 58.) The situation escalated quickly, and many American Airlines employees both in and outside of Philadelphia complained to the Company through various channels, including via an ethics hotline, directly to Colasante, and even to the Company's Chief Executive Officer. (SOF ¶ 59.) Multiple employees told Colasante they would refuse to work with Koslosky again because they believed her to be racist. (SOF ¶ 60.)

The situation created significant turmoil in the workplace, engendered complaints from customers, and became a public relations problem for the Company. (SOF ¶ 61.) In her nearly thirty-year career at American Airlines, Colasante had never seen another employee's conduct generate more widespread negative feedback in the workforce. (SOF ¶ 62.) The outcry over

Koslosky's conduct became so widespread so quickly that by the end of the day on September 26, 2017, Colasante felt the need to reaffirm American Airlines' commitment to diversity and inclusion and sent the following message to all the Company's Philadelphia-based employees:

> I am aware of recent comments made on social media that have left some of you feeling upset and uncomfortable. We are looking into the situation to understand the details and will handle it appropriately and in accordance with company policy. In the meantime, I ask that we all remember that our work at American Airlines should be based on an environment of inclusion, mutual respect and consideration for all of our team members. Thank you for all that you do for each other and for our customers.

(SOF ¶ 63.)

On September 27, 2017, American Airlines suspended Koslosky, and on September 29, 2017, Koslosky met with managers Jenny O'Neill and Nicole Blanchard. (SOF ¶¶ 64–66.) During the meeting, Koslosky acknowledged that she had posted the content in question and maintained (and continued to maintain at her deposition in this lawsuit) that she had done nothing wrong, could not understand how any of her posts could be viewed as even racially insensitive, and attributed the outcry to her belief that people who look for racism will find it. (SOF ¶ 67.)

Colasante decided to terminate Koslosky's employment. (SOF ¶ 68.) Colasante found Koslosky's posts to be racist, inconsistent with American Airlines' diversity and inclusion values, and in violation of the Company's social media policy, work environment policy and Professional Conduct Standards for Passenger Service Employees. (SOF ¶ 69.) On October 6, 2017, American Airlines terminated Koslosky's employment. (SOF ¶ 70.) At the time of Koslosky's termination, 75% of American Airlines' customer service agents in Philadelphia were female. (SOF ¶ 71.)

Koslosky filed a grievance challenging her termination, but her union refused to take her claim to arbitration. (SOF ¶ 72.) Koslosky's union vice president explained to Koslosky why the union would not take her case:

Based on the publicly accessible Facebook postings that you acknowledged placing on your account, and defended by stating that you could not understand why anyone would be upset by them, an arbitrator would easily find that American Airlines had just cause to take disciplinary action against you. The degree of discipline would be considered in light of the disruption in the workplace that your presence would accompany. Your actions not only violated various AA policies, they have also alienated and angered a large share of your co-workers. An arbitrator would be most reluctant to return you to the work place, in particular since you remain reticent to acknowledge the impact that your postings has on a large segment of American's workforce. For the above stated reasons, I cannot agree to advance this grievance to arbitration.

(SOF ¶ 73.)

### D.      TOM DOERSAM'S FACEBOOK POSTS.

Tom Doersam was a customer service supervisor who posted political comments to Facebook that tended to be critical of President Trump and his supporters. (SOF ¶ 74.) Doersam never posted racist comments or otherwise targeted minority communities or other members of a protected class like Koslosky did. (SOF ¶ 75.) Moreover, no one ever complained to American Airlines about Doersam's Facebook content, including Koslosky, who thinks Doersam is "great" and "a terrific guy." (SOF ¶ 76.) Colasante, the decisionmaker with respect to Koslosky's termination, was unaware of Doersam's Facebook posts. (SOF ¶ 77.)

### E.      KOSLOSKY'S CLAIMS.

Koslosky believes that Colasante terminated her employment to "quiet the mob." (SOF ¶ 78.) Nevertheless, she has brought an employment discrimination lawsuit alleging that American Airlines terminated her employment because she is a woman in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA") (Counts I and II), because she has a disability in violation of the Americans With Disabilities Act ("ADA") and the PHRA (Counts III and IV) and in retaliation for having requested an accommodation for her disability in violation of the ADA and the PHRA (Counts V and VI). (SOF ¶ 79.) Koslosky

also brings a failure to accommodate claim under the ADA and the PHRA for declining Koslosky's requests to work exclusively at gates in Terminal B (Counts III and IV).  (Id.)

During Koslosky's deposition, however, she testified that she was <u>not</u> asserting that American Airlines terminated her because of her disability or in retaliation for her request for an accommodation.  (SOF ¶ 80 ("I am not contending that I was terminated because I had a disability."); SOF ¶ 81 ("Q.  Are you contending that the fact you asked for an accommodation played a role in the decision to terminate you . . . .?  A.  Not at all.  No, not at all.").)  Koslosky clarified that the only claims she intended to pursue are: (1) a claim that American Airlines failed to accommodate her disability by assigning her exclusively to gates in Terminal B; and (2) a claim that American Airlines terminated her employment because of her gender.  (SOF ¶ 82.)  Despite so limiting her claims during her deposition, Koslosky refused American Airlines' request that she withdraw the claims she said she was not pursuing.  (SOF ¶ 83.)

### F.     KOSLOSKY'S CHARGE OF DISCRIMINATION.

On February 21 or 27, 2018, Koslosky filed a Charge of Discrimination with the EEOC and cross-filed it with the PHRA.  (SOF ¶ 84.)

## III.   <u>LEGAL ANALYSIS</u>

The Court should grant summary judgment to American Airlines on Koslosky's claims. Her failure to accommodate claim is subject to summary judgment because it is untimely and because American Airlines offered accommodations to Koslosky that would have met her physical restrictions and she refused them.  The Court should grant summary judgment on Koslosky's claims that American Airlines terminated her employment because of her disability and in retaliation for requesting an accommodation because she testified under oath that she does not contend that her disability or protected activity had anything to do with American Airlines' decision to terminate her employment.  Finally, summary judgment is appropriate on Koslosky's

gender, disability and retaliation claims arising out of her termination because there is neither evidence that Colasante was motivated to terminate Koslosky's employment because of her protected characteristics or protected activity nor evidence to rebut American Airlines' nondiscriminatory and nonretaliatory explanation for its decision to terminate.

### A.    LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT.

Summary judgment should be granted where there is no material fact in dispute and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 292 (3d Cir. 2012).  A fact is "material" only if it might affect the outcome of the action and disputes over non-material facts do not preclude a grant of summary judgment.  Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Although the Court must examine the evidence in the light most favorable to the non-moving party, the non-moving party may not defeat summary judgment by relying "upon bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (quoting Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)), but must instead show through affidavits or admissible evidence that an issue of material fact remains for trial.  See In re Actiq Sales & Mktg. Practices Litig., 790 F. Supp. 2d 313, 319–20 (E.D. Pa. 2011) (citing cases).  When the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case.  See Omnipoint Commc'ns Enters., L.P. v. Newtown Twp., 219 F.3d 240, 242 (3d Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

### B.    KOSLOSKY'S FAILURE TO ACCOMMODATE CLAIM IS UNTIMELY.

The ADA and the PHRA both have administrative exhaustion requirements.  For ADA claims in a deferral state such as Pennsylvania, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct.  See 42 U.S.C. § 12117(a); 42

U.S.C. § 2000e-5(e)(1). "To bring suit under the PHRA, an administrative complaint must first be filed with the PHRC within 180 days of the alleged act of discrimination." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 164 (3d Cir. 2013) (citing 43 Pa. Cons. Stat. § 959(h)). The administrative filing deadlines "are strictly construed." Fusco v. Bucks Cty., No. CIV.A. 08-2082, 2009 WL 4911938, at *6 (E.D. Pa. Dec. 18, 2009).

A failure to accommodate claim accrues on the day the requested accommodation is first denied, and a plaintiff cannot restart the limitations period by renewing a previously denied request. See Washington-Morris v. Bucks Cty. Transp., Inc., No. CV 17-3631, 2018 WL 2021081, at *6 (E.D. Pa. May 1, 2018) ("[A] reasonable accommodation request is a one-time occurrence . . . even when the plaintiff made multiple requests for the same reasonable accommodation and that request was repeatedly denied." (internal quotation marks omitted)); Mercer v. Se. Pa. Transit Auth., 26 F. Supp. 3d 432, 442 (E.D. Pa. 2014), aff'd sub nom. Mercer v. SEPTA, 608 F. App'x 60 (3d Cir. 2015) (a denial of a reasonable accommodation request is a one-time occurrence, and renewals of previously denied requests do not reset the accrual date of the claim for limitations purposes).

On August 22, 2016, American Airlines denied Koslosky's request to be assigned exclusively to Terminal B as an accommodation for her walking restrictions. Thus, for her PHRA and ADA failure to accommodate claims to have been timely, Koslosky would have had to have filed an administrative complaint with the PHRC by February 19, 2017, and a charge of discrimination with the EEOC by June 19, 2017. Koslosky, however, did not file with the PHRC or the EEOC until February 2018, a year too late on her state law claim and eight months too late on her federal claim. Koslosky's renewed request in 2017 to be assigned exclusively to Terminal B as an accommodation for her walking restrictions did not start a new limitations period. See

Mercer, 26 F. Supp. 3d at 442 ("Permitting [an employee] to restart the clock by again asking for the same accommodation . . . would . . . undercut the statutory limits imposed by Congress.") Koslosky's failure to accommodate claims are time-barred and the Court should grant summary judgment in American Airlines' favor on them.

### C. AMERICAN AIRLINES DID NOT FAIL TO ACCOMMODATE KOSLOSKY.

Even if Koslosky's failure to accommodate claim had been timely, American Airlines would be entitled to summary judgment on the merits. To establish a *prima facie* case of disability discrimination, a plaintiff must demonstrate that she was disabled, was otherwise qualified to perform the essential functions of her job and suffered an adverse employment action because of disability discrimination.[6] See, e.g., Keyhani v. Trs. of Univ. of Pa., No. CV 17-3092, 2019 WL 2568279, at *4 (E.D. Pa. June 21, 2019) (quoting Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 568 (3d Cir. 2002)). An adverse employment action can be established in a failure to accommodate case if the employer failed to engage in an interactive process and make reasonable efforts to assist the employee, and the employee shows she could have been reasonably accommodated but for the employer's lack of good faith. Id.

Although a qualified disabled employee may be entitled to an accommodation, there is no requirement that an employer "provide [] the exact accommodation [the employee] want[s]; rather, all the interactive process requires is that employers make a good-faith effort to seek

---

[6]     Koslosky brings each of her claims under both federal anti-discrimination law and the PHRA. Courts analyze claims of gender discrimination, disability discrimination, and retaliation under the PHRA according to the same standards as claims under Title VII or the ADA. See Brzozowski v. Pa. Tpk. Comm'n, 165 F. Supp. 3d 251, 259 (E.D. Pa. 2016) (analyzing Title VII and PHRA discrimination claims under same standard); Myatt v. Village, No. CV 19-130, 2019 WL 2288116, at *1 & n.5 (E.D. Pa. May 29, 2019) (interpreting the PHRA coextensively with the ADA).

accommodations." Hofacker v. Wells Fargo Bank Nat'l Ass'n, 179 F. Supp. 3d 463, 469 (E.D. Pa. 2016) (internal edits and quotation marks omitted); see also Diaz v. City of Phila., 565 F. App'x 102, 106 (3d Cir. 2014) ("The ADA does not . . . require an employer to provide a disabled employee with the accommodation of her choosing."); Solomon v. Sch. Dist. of Phila., 532 F. Appx. 154, 158 (3d Cir. 2013) ("[A]n employee cannot make the employer provide a specific accommodation if another reasonable accommodation is instead provided."); Keyhani, 2019 WL 2568279, at *4 ("Plaintiff is not entitled to the accommodation of her choosing."). In the end, "the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide." 29 C.F.R. § Pt. 1630, App.

American Airlines satisfied its obligation to Koslosky in response to her expressed need to avoid excessive walking. Postlewait and Yori engaged in interactive discussions with Koslosky and, although the Company declined Koslosky's specific request to be assigned exclusively to gates in Terminal B because of the potential effect on the operation, they identified multiple alternative customer service functions Koslosky could have performed that would not have required excessive walking. Although the alternatives presented by American Airlines may not have been Koslosky's preferred accommodation, they were reasonable accommodations. Koslosky's unwillingness to consider these alternative accommodations precludes her claim. See Yovtcheva v. City of Phila. Water Dep't, 518 F. App'x 116, 121–22 (3d Cir. 2013) (employee who refused to try employer-offered accommodation not a "qualified individual" under the ADA); Shultz v. Potter, 142 F. App'x 598, 600 (3d Cir. 2005) (plaintiff's unreasonable rejection of alternative accommodation defeated ADA claim as plaintiff "cannot be considered a 'qualified individual with a disability.'"); Hofacker, 179 F. Supp. 3d at 471–72 ("Plaintiff cannot bring a

claim against Defendant for lack of good faith when she was the one who failed to adequately consider a reasonable accommodation offered."); see also 29 C.F.R. § 1630.9(d) ("An individual with a disability is not required to accept an accommodation . . . . However, if such individual rejects a reasonable accommodation . . . and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified.")

American Airlines did not fail to accommodate Koslosky's walking restrictions. To the contrary, the Company offered to accommodate Koslosky's restrictions by moving her to the ticket counter, Special Services, recheck or POC and it was Koslosky's stubborn refusal that thwarted a reasonable accommodation from taking effect. American Airlines is entitled to summary judgment on Koslosky's failure to accommodate claim.

### D. AMERICAN AIRLINES IS ENTITLED TO SUMMARY JUDGMENT ON KOSLOSKY'S GENDER, DISABILITY AND RETALIATION CLAIMS.

To demonstrate a *prima facie* case of gender or disability discrimination, Koslosky must show, *inter alia*, that she was terminated under circumstances that raise an inference of discrimination. See Jeffrey v. Thomas Jefferson Univ. Hosp., Inc., No. CV 17-0531, 2019 WL 2122989, at **8–11 (E.D. Pa. May 14, 2019). To establish a *prima facie* case of retaliation, Koslosky must demonstrate, *inter alia*, that her termination was causally related to her prior requests for an accommodation. See Poper v. SCA Americas, Inc., No. CIV.A. 10-3201, 2012 WL 3288111, at *10 (E.D. Pa. Aug. 13, 2012).

If Koslosky can demonstrate a *prima facie* case of discrimination or retaliation, it would merely shift the burden to American Airlines to articulate a legitimate, nondiscriminatory and nonretaliatory explanation for the adverse employment action. See Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013); Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). If American Airlines meets its burden of production in this regard, Koslosky's claims can only

survive summary judgment if she can produce evidence from which a reasonable inference could be drawn that the proffered explanation for the adverse employment action is merely a pretext for intentional discrimination. Burton, 707 F.3d at 426–27. Moreover, "[t]o prove causation at the pretext stage for an ADA or PHRA retaliation claim, the plaintiff must show that her protected activity was the 'but-for' cause of the adverse employment action." Larochelle v. Wilmac Corp., 769 F. App'x 57, 65 (3d Cir. 2019) (citing Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013)).

**1.     Koslosky's Disability Discrimination and Retaliation Claims are Precluded by Her Sworn Testimony that She was Not Pursuing Those Claims.**

Koslosky cannot establish a *prima facie* case of disability discrimination or retaliation in connection with her termination because she abandoned those claims during her deposition. Where a plaintiff testifies in her deposition that she is not pursuing a certain legal theory of relief, claims based on that theory of relief are precluded. See Thompkins v. PNC Bank, No. 10-CV-163, 2010 WL 4116876, at *4 (W.D. Pa. Oct. 15, 2010) (granting summary judgment on gender discrimination claims "[b]ecause Plaintiff admitted during his deposition that no one at PNC discriminated against him because of his sex/gender"); Foster v. JLG Indus., No. CIV. 1:CV-03-2088, 2006 WL 223899, at *3–4 (M.D. Pa. Jan. 30, 2006), aff'd sub nom. Foster v. JLG Indus., Inc., 199 F. App'x 90 (3d Cir. 2006) (granting summary judgment on ADEA retaliation claim where plaintiff testified during deposition he did not believe he had been discriminated against because of his age); Dorsey v. The Salvation Army, No. CIV.A. 04-844, 2005 WL 181912, at *1 (E.D. Pa. Jan. 27, 2005) (Title VII claim precluded where plaintiff testified during his deposition he was not asserting a Title VII claim); Evans v. Nine W. Grp., Inc., No. CIV.A. 00-4850, 2002 WL 550477, at *4 (E.D. Pa. Apr. 15, 2002) (granting summary judgment as to any potential FMLA

claim because "plaintiff explicitly stated during her deposition that she did not believe that anyone at [the Company] treated her differently because of any desire she possessed to take leave pursuant to the FMLA."). Koslosky abandoned her claims that American Airlines terminated her employment because of her disability and in retaliation for requesting an accommodation. Accordingly, American Airlines is entitled to summary judgment on them.

### 2. Koslosky Cannot Demonstrate a *Prima Facie* Case of Discrimination or Retaliation.

There is no evidence from which an inference can be drawn that Colasante terminated Koslosky's employment because of her gender, disability, or in retaliation for asking for an accommodation. The passage of more than two months between Koslosky's last accommodation request and Colasante's decision to terminate Koslosky's employment is too long for an inference of retaliation to arise out of the temporal proximity between the protected activity and adverse employment action. See, e.g., Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (two-month gap between protected activity and adverse action not unusually suggestive of retaliation); Mullen v. Northampton Twp., No. 2:18-CV-03113-JDW, 2019 WL 5803974, at *3 (E.D. Pa. Nov. 7, 2019) (two and one-half months not unduly suggestive); Gillyard v. Geithner, 81 F. Supp. 3d 437, 444 (E.D. Pa. 2015) (two months between protected activity and adverse employment action does not create an inference of retaliation).

Thus, Koslosky can only establish a *prima facie* case of discrimination or retaliation if she can produce evidence "that similarly situated comparators were treated more favorably under similar circumstances" or evidence showing "a causal connection between the protected activity and the adverse employment action." Hamilton v. Se. Pa. Transp. Auth., No. CIV.A. 12-804, 2014 WL 2862146, at *7, *15 (E.D. Pa. June 24, 2014). There is no evidence under either prong.

a.      Koslosky Has Not Identified Similarly Situated Comparators Who
        Were Treated More Favorably.

To the extent that Koslosky contends that Doersam was a similarly situated comparator, she is mistaken.  To be similarly situated, a comparator must be similarly situated in "all relevant respects," including having the same job responsibilities, the same supervisors, and engaging in comparable misconduct.  See McWilliams v. Cmty. Educ. Ctrs., No. CV 14-4783, 2015 WL 12843826, at *2 (E.D. Pa. Nov. 13, 2015).  Doersam is not similarly situated for several reasons.

First, Koslosky and Doersam held different jobs, the former a customer service agent and the latter a supervisor.  See Fayewicz v. Redner's Markets, Inc., No. CIV.A. 09-2596, 2010 WL 1644626, at *9 (E.D. Pa. Apr. 23, 2010) (supervisor not similarly situated to non-supervisor). Second, Koslosky's and Doersam's conduct was dissimilar.  Indeed, the only similarity between Koslosky and Doersam is that they both have Facebook accounts.  The widespread unrest generated by Koslosky's racist Facebook posts, which was the worst Colasante had seen in the workforce in thirty years, stands in sharp contract with the fact that no one – including Koslosky – ever complained about anything Doersam posted on Facebook.  See Francis v. Lehigh Univ., No. 10-CV-4300, 2013 WL 787089, at *8 (E.D. Pa. Mar. 1, 2013), aff'd, 561 F. App'x 208 (3d Cir. 2014) (purported comparators not similarly situated where there was no evidence of any complaints made against comparators).  Third, Doersam's Facebook posts are not evidence that Colasante treated Koslosky less favorably than someone outside of her protected classes because Colasante did not know about Doersam's Facebook posts. See Oliver v. Clinical Practices of Univ. of Pa., 921 F. Supp. 2d 434, 448 (E.D. Pa. 2013) (coworker not a relevant comparator absent evidence that decisionmaker was aware of coworker's alleged conduct).  Finally, unlike Koslosky, Doersam did not post racist comments or denigrate a class of individuals based on a protected characteristic.  See Sawa v. RDG-GCS Joint Ventures III, No. CV 15-6585, 2017 WL 3033996,

at **21–22 (E.D. Pa. July 14, 2017) (purported comparators' violations of company's computer use policy, including internet surfing and online shopping during downtime, not similar to plaintiff's violations that included completing assignments and assessments for his online classes); Johnson v. NewCourtland, Inc., No. CIV.A. 13-4238, 2015 WL 894320, at *13 (E.D. Pa. Mar. 3, 2015) (alleged comparators not similarly situated because while conduct was superficially similar in that individuals engaged in dissemination of confidential information as a result of their human resources positions, alleged comparators' breaches were not as severe). Thus, Doersam was not similarly situated to Koslosky and she has not identified any other purported similarly situated employees.

      b.     <u>There is No Evidence of a Causal Nexus Between Koslosky's Protected Characteristics or Activity and her Termination.</u>

There is no other evidence that would give rise to an inference that Colasante bore discriminatory or retaliatory animus against Koslosky. To the contrary, Koslosky's gender discrimination claim is belied by the fact that 75% of the customer service agents in Philadelphia were female, every person involved in the investigation of Koslosky's Facebook posts was female and Colasante, the decisionmaker, is female. See <u>Allen v. PetSmart, Inc.</u>, 512 F. Supp. 2d 288, 295 (E.D. Pa. 2007) ("The decision makers' membership in the same protected class as the plaintiff weakens any inference of discrimination."). Likewise, Koslosky's rank speculation that Colasante bore animus against her because of her disability or request for an accommodation is contrasted by the fact that Colasante <u>granted</u> Koslosky's request to work exclusively at gates in Terminal B "solely for the purpose of helping Colleen" approximately two months before the termination. <u>Cf.</u> <u>Hubbard v. Ashcroft</u>, 44 F. App'x 542, 545 (3d Cir. 2002) (decisionmaker's earlier favorable treatment of employee made it less likely that later adverse employment action was a result of discrimination).

Thus, Koslosky cannot establish a *prima facie* case and the Court should grant summary judgment to American Airlines.

### 3.    Koslosky Cannot Rebut American Airlines' Explanation.

Koslosky cannot rebut American Airlines' legitimate, nondiscriminatory and nonretaliatory explanation for the challenged employment decisions. Here, the Company has met its burden by explaining that Koslosky was terminated after she made racist comments on Facebook that went viral and caused widespread outrage among American Airlines' customers, employees and leaders. See Caplan v. L Brands/Victoria's Secret Stores, LLC, 210 F. Supp. 3d 744, 764 (W.D. Pa. 2016) (plaintiff's racially offensive and derogatory Facebook posts were legitimate, nondiscriminatory reason to terminate). Once the defendant employer satisfies its burden of identifying a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to produce evidence from which an inference of pretext can be made. McKenna v. Healthease, Inc., No. CIV.A. 10-3940, 2013 WL 1702639, at *9 (E.D. Pa. Apr. 19, 2013) (quoting Burton, 707 F.3d at 426). "The plaintiff can demonstrate pretext through evidence from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. If the plaintiff attacks the employer's credibility regarding its proffered reason for the adverse employment action, the plaintiff's evidence 'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 764–65 (3d Cir. 1994)) (internal citations omitted).

Koslosky has no evidence of pretext. Rather, she simply disagrees with Colasante's decision to terminate and thinks that American Airlines should let its employees express their views, regardless of how repugnant the Company's customers, employees and leaders find them. Koslosky's disagreement with the decision to terminate, however, is not evidence of pretext. See Wooler v. Citizens Bank, No. CIV.A. 06-1439, 2006 WL 3484375, at *4 (E.D. Pa. Nov. 30, 2006), aff'd, 274 F. App'x 177 (3d Cir. 2008) (a plaintiff's "belief that [her employer] should have given her the benefit of the doubt . . . is simply insufficient to enable a jury rationally to conclude that [the employer's] legitimate, non-discriminatory reason was a pretext for . . . discrimination."); see also Gaddis v. Brandywine Senior Care, Inc., No. CV 18-2479, 2019 WL 4384139, at *8 (E.D. Pa. Sept. 11, 2019) (subjective disagreement regarding seriousness of errors or that termination was warranted insufficient to establish termination decision merely pretext for disability discrimination).

## IV.    **CONCLUSION**

WHEREFORE, for the foregoing reasons, American Airlines respectfully requests that the Court grant its Motion for Summary Judgment.

Date:  November 19, 2019

Respectfully submitted,

*/s/ Daniel E. Farrington*

_____

Daniel E. Farrington (*pro hac vice*)
Margaret J. Scheele (*pro hac vice*)
Fisher & Phillips LLP
7501 Wisconsin Avenue, Suite 1220W
Bethesda, MD 20814
Tel.  301-951-1538
Fax  301-880-5031
dfarrington@fisherphillips.com
mscheele@fisherphillips.com

*Attorneys for Defendant*
*American Airlines, Inc.*